CROSIER v. McNEAL.

1. WHAT CONSTITUTES SUFFICIENT NOTICE TO EXEMPT A WITHDRAWING PARTNER FROM LIABILITY FOR SUBSEQUENT DEBTS.

The publishing, by a firm, of notice of dissolution thereof in a paper of general circulation in the community where such firm has carried on its business, is sufficient to exempt the withdrawing members thereof from liability for any debts contracted after such dissolution by a new firm, under the same partnership style, with persons who had not dealt with the old firm.

2. ACTUAL NOTICE OF DISSOLUTION NECESSARY TO EXEMPT WITHDRAWING PARTNERS FROM LIABILITY FOR NEW DEBTS.

To exempt such withdrawing partners from liability for debts, contracted by such new firm with former dealers of the old firm, actual notice of such dissolution must have been brought to such former dealers.

3. WHO ARE NOT "FORMER DEALERS" OF AN OLD FIRM, SUBSEQUENTLY DISSOLVED AND CHANGED IN MEMBERSHIP.

Where such old firm, prior to its dissolution, had transacted business with another firm, composed of C. and M., who subsequently dissolved, and thereafter M., individually transacted business with such new firm. *Held:* M. could not be regarded as a former dealer with such old firm so as to hold such retiring members for debts contracted in his favor by the new firm.

4. COMPETENCY OF COMMERCIAL AGENCY'S REPORTS TO PROVE NOTICE OF DISSOLUTION.

In an action brought by a creditor of a firm to charge a person as a member of such firm, a book, published by a commercial agency, and of general use among commercial men, and noting the fact that the defendant is not a member of such firm, and to which the plaintiff has had access, is competent evidence to go to the jury as tending to show that the plaintiff had notice of such fact.

HALE, J.

The case of *William Crosier, Plaintiff in Error*, v. *Samuel C. McNeal, Defendant in Error*, is a proceeding in which the reversal of the judgment of the court of common pleas is sought. The errors assigned are several. I will first notice the errors assigned to the overruling of the motion for a new trial. We were asked by counsel, to carefully read this entire record, and have done so; and have given the case a very careful consideration.

It must be conceded that from 1888 to 1890 a partnership existed between William Crosier and George W. Crosier; any finding of the jury against that proposition would be against the weight of the evidence.

Further upon the question as to the dissolution of that firm, we think that any finding of the jury holding that the firm was not dissolved in 1890, would be against the weight of the evidence; that the testimony clearly establishes as between the brothers, George W. and William, the firm was dissolved in 1890, so that at the time of the transaction here complained of, no partnership in fact existed between George W. and William Crosier.

The claim in controversy is based upon two bills of exchange or drafts, given by George W. Crosier to McNeal, or acceptances in favor of McNeal. One dated September 6, and the other October 6, and an account for goods sold by McNeal to George W. Crosier & Company on the 6th of October, 1892, aggregating something over $1,200. Then the liability of William cannot be based upon the fact that he was a partner with George W. as between themselves. Finding as we do, and as the jury should have found, that the partnership that existed prior to 1890 was in that year dissolved, it becomes essential to inquire whether William, although not a partner in fact, with George W. Crosier, is liable for this claim for any other reason.

The dissolution occurred in 1890. The usual notice of the dissolution of that firm was published in a local paper, of the general circulation a paper printed in a town of the size of Wellington would have, and the ordinary steps taken by the firm, to cause it to be known to the world that a dissolution had taken place. And so far as this record discloses, it would seem to have been well understood in the neighborhood where the firm was doing business, that such dissolution had taken place. And we think it was sufficient to exempt William Crosier from any liability, for the debts of George W. Crosier & Company, contracted after the dissolution, with persons who had not been dealers with the firm prior to the dissolution. So that as to the customers of the new firm, or of the firm after the dissolution, he would not be liable.

But it is claimed that McNeal was a dealer with the firm of George W. Crosier & Company, while William was a partner of that firm, and that the transactions between McNeal and such firm were such, as to constitute McNeal what is known as a former dealer with the firm of G. W. Crosier & Co.

The rule relating to notice of the dissolution of a partnership is essentially different, as applied to former dealers with a firm from the rule which relates to subsequent dealers only. I suppose the rule to be, that if the retiring partner desires to exempt himself from liability, for the debts of the new firm, contracted with a dealer of the old firm, he must cause actual notice of his retirement from the firm to be given to such former dealer. I do not mean that, if the former dealer gets the information from any source of the dissolution of the firm, it would not answer the purpose, but actual notice is required in such case; hence it becomes essential to inquire whether Samuel C. McNeal was a dealer with the firm of George W. Crosier & Company, while William Crosier was a member of that partnership.

The facts bearing upon that proposition are not disputed. Cassidy & Mc-Neal were, prior to, or perhaps in the year 1888, partners, doing business in Summit county, at Peninsula, under the firm name of Cassidy & McNeal. The dealings, it appears from this record, that are relied upon as fixing the statutes of McNeal, as a former dealer with the old firm of G. W. Crosier & Co., were transactions that took place between Cassidy & McNeal, the firm at Peninsula, and George W. Crosier & Co. They were sales of cheese from Cassidy & McNeal to George W. Crosier & Co., in 1888. The firm of Cassidy & McNeal dissolved shortly after these transactions. McNeal at the time of the transactions in controversy in this action, was doing business in Akron by himself; Cassidy had gone elsewhere and was doing business either by himself or in connection with others. Nearly four years had elapsed between the dealings of the firm of Cassidy & Mc-Neal, with George W. Crosier & Co., in 1888, and the transactions out of which this controversy grows, and we hold that considering the length of time that had elapsed; the fact that the dealings were between the firm of which McNeal was a partner, and the firm of George W. Crosier & Co.; that no individual dealing had ever taken place between George W. Crosier & Co., and McNeal; that McNeal cannot be considered, and does not fall within the term of former dealer of the old firm, and is not to be so regarded in settling this transaction. The books of the firm of George W. Crosier & Co. would not contain the name of Samuel C. McNeal. The dealing was with the firm of Cassidy & McNeal, and we do not think that it was incumbent upon the retiring partner, William Crosier, to trace out each individual member of the firm of Cassidy & McNeal, with which his firm had dealt and see that actual notice was brought to each member of that firm, and if the jury found otherwise it was against the weight of the evidence. Considering the verdict rendered, we think the jury must have found that McNeal was a former dealer with the firm of G. W. Crosier & Co., and that finding we hold was against the weight of the evidence.

This erroneous finding was perhaps partly due to the charge of the court, and in part to the jury. The court did not define to the jury what would consti-

tute a former dealer with the firm of G. W. Crosier & Co.; but left the jury to determine as a question of fact, whether McNeal was to be treated as a former dealer with the old firm, without defining what would in law constitute such former dealer, or giving the jury very much of a guide in determining that question.

Again, it is said that, during the years of '92 and '93, especially in '92 when this transation took place, William was holding himself out so as to be chargeable as a partner as to third persons dealing with the firm of G. W. Crosier & Co. It is true that George W. Crosier & Co. was the style of the firm while William was a partner; it is true as we find that that firm was dissolved in 1890; it is true that George W. Crosier continued as between him and William the business in the same firm name; it is true that there was some stationery and bill heads, used while William was a member of the firm, left in the possession of George W. Crosier, and that some of that stationery (and but a small amount, according to this record) was used by George W. Crosier, after the partnership was dissolved, but there is not a particle of proof that any of that stationery was used with the knowledge of William, or with his sanction, or was ever authorized by him in any way.

It is true also that William owned a cheese factory in Pittsfield; that George W. Crosier after the dissolution handled the product of that factory; but he had done so.for a long number of years, prior to the formation of the partnership with William, the same as they handled it after the dissolution and during the existence of the partnership between George and William, and there is nothing in all this that would justify any outsider in dealing with George W. Crosier & Co., after that dissolution, relying upon the fact that William was responsible for the obligations of that firm.

Anybody could have found out, according to this record, by the least inquiry that William had attempted at least to get out of that firm. George W. Crosier had been doing business there for more than twenty years, William having no connection or partnership with him. In 1888 William did go in partnership with him, which partnership continued to 1890, when William retired from the firm, and the business was resumed precisely as it had been prior to that time; so that upon the facts set forth in this record we find there was no ground upon which William should be held liable for this debt, and that the motion for a new trial should have been granted instead of overruled.

Exceptions were taken during the progress of the trial to the introduction of certain testimony, which testimony was allowed to go to the jury against the objection of the defendant, William Crosier. The objections were general somewhat, and can be classified. I take it that declarations of one partner—statements of one partner after the dissolution were not competent to bind the other partner, unless authorized by him. I think the court recognized that rule, and undertook to decide as to the competency of the testimony in view of it. But under the claims made, considerable testimony was given to the jury that ultimately should have no, or at least very little, weight as against William, and it is barely possible that there should have been some limit placed upon the effect to be given to that testimony, by the court in the charge to the jury, but in the main the line of rulings, the rulings of the court upon this testimony were correct as the case stood at the time that testimony was offered.

The testimony relating to the former dealing of McNeal with the firm of George W Crosier & Co., while William was a partner was all allowed, probably under the claim made that McNeal was a former dealer of the firm, but we think it might properly have been limited in its effect, in the charge to the jury.

There was one item of testimony that was rejected of which serious complaint is made, and that is this: as we have found this firm was in fact dissolved in 1890; Bradstreet's commercial agency published a book, which was in general use in 1892, among commercial men, and to that book McNeal had

access. That book noted the fact that William was not a partner. The language of the report of Bradstreet was "George W. Crosier and Co., company nominal." Just how much weight that should have had with the jury we do not determine, but in connection with the facts as I have stated, showing that Mc-Neal had access to that book; that it was of general use among commercial men, that that fact appeared on the book, while by no means conclusive we are all agreed that it was a circumstance that might well have gone to the jury. I think of nothing else that I need to state in disposing of the case. The judgment of the court of common pleas will be reversed. The grounds specified may be, error in overruling the motion for a new trial, and in rejecting the testimony to which I have referred, being the entry in Bradstreet's report.